Commonwealth *v.* Thomas, Appellant.

Submitted November 9, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James Eiseman, Jr.,* and *Drinker, Biddle & Reath,* for appellant.

*Peter S. Greenberg* and *Milton M. Stein,* Assistant District Attorneys, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, June 28, 1971:

This appeal necessitates our consideration of whether, in the particular circumstances of this case, the admission of certain hearsay testimony pursuant to a long recognized exception to the hearsay rule violated appellant's right of confrontation as guaranteed to him by the Sixth Amendment and applied to the states through the Fourteenth Amendment. Our review of this voluminous record and the relevant authorities persuades us that no such violation occurred. Accordingly, we affirm his conviction.

Neither appellant nor the factual background to this appeal are strangers to our Court. We therefore will not here repeat the entire saga surrounding his conviction except insofar as the facts are pertinent to the narrow issue now before us.[1]

The theory of the Commonwealth was that appellant Thomas, a deputy sheriff of Dade County, Miami, Florida, became acquainted with the deceased victim, Mrs. Lulubel Rossman, when she enlisted the aid of Thomas's

---

[1] For a more thorough history of the factual background of this case, see *Commonwealth v. Thomas,* 410 Pa. 160, 189 A. 2d 255, cert. denied, 375 U.S. 856, 84 S. Ct. 118 (1963); *Commonwealth v. Ellsworth,* 409 Pa. 505, 187 A. 2d 640 (1963); *Commonwealth v. DeMoss,* 401 Pa. 395, 165 A. 2d 14 (1960), cert. denied, 365 U.S. 822, 81 S. Ct. 708 (1961); *Commonwealth v. Wilson,* 394 Pa. 588, 148 A. 2d 234, cert. denied, 361 U.S. 844, 80 S. Ct. 97 (1959); see also, *Commonwealth v. Ellsworth,* 421 Pa. 169, 218 A. 2d 249 (1966). The ensuing abbreviated version of the facts is based primarily on the narration of Mr. Justice JONES in petitioner's direct appeal, see *Commonwealth v. Thomas,* supra at 162-63, 189 A. 2d at 257.

fellow deputy to report on the activities of one Reverend Russell Ridgeway, an itinerant clergyman with whom she thought herself to be amorously involved.[2] Thomas eventually took charge of the investigation in a private capacity, and through this employment he discovered that the deceased was an elderly, eccentric widow in the habit of keeping large sums of money in new one hundred dollar bills on her person and in her living quarters. The Commonwealth sought to prove that appellant conceived the idea of robbing Mrs. Rossman and enlisted the assistance of Gus DeMoss, Raymond Wilson and Frank Ellsworth. It was the Commonwealth's view that on July 3, 1955, in furtherance of the conspiracy Wilson and Ellsworth went to Philadelphia, entered the deceased's room in the Adelphia Hotel, and robbed her of a large sum of money. During the course of the robbery, Mrs. Rossman was strangled to death.

Appellant was indicted on charges of conspiracy and murder generally. After a jury trial, he was found guilty of both conspiracy and murder in the first degree. A nolle prosequi was entered on the conspiracy charge, and appellant was sentenced to life imprisonment on his murder conviction.

Thomas appealed from the judgment of sentence, alleging that Pennsylvania courts lacked jurisdiction to try him for murder, the charge of the court placed undue emphasis upon the Commonwealth's testimony, and hearsay testimony of five witnesses was improperly received into evidence. This Court sustained his conviction. *Commonwealth v. Thomas,* 410 Pa. 160, 189 A. 2d 255, cert. denied, 375 U.S. 856, 84 S. Ct. 118 (1963).

In April, 1969, appellant filed a petition for habeas corpus in the United States District Court for the East-

---

[2] Mrs. Rossman had given Reverend Ridgeway approximately $20,000 worth of funds and equipment. She was now endeavoring to recover the money.

ern District of Pennsylvania. The second asserted error in that petition concerned the admission of the hearsay testimony pursuant to the state of mind exception to the hearsay rule. The district court denied the petition without prejudice on this issue, noting that appellant's earlier appeal to our Court was decided prior to *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620 (1968) and *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065 (1965) and that therefore appellant had failed to exhaust his state remedies on the issue of whether the admission of the hearsay evidence deprived him of any constitutional rights guaranteed by the confrontation clause of the Sixth Amendment. *United States ex rel. Thomas v. Pennsylvania,* 299 F. Supp. 651, 652-53 (E.D. Pa. 1969).

Thomas initiated the present proceeding pursuant to the Post Conviction Hearing Act[3] on December 16, 1969. An evidentiary hearing was held, and on February 19, 1970, the hearing court denied the petition and filed an opinion setting forth the reasons for its action. The instant appeal followed.

Appellant is asking that we consider a narrow, but as yet undecided question in this Commonwealth, namely, whether *Bruton v. United States,* supra, as applied retroactively to the states, see *Roberts v. Russell,* 392 U.S. 293, 88 S. Ct. 1921 (1968), mandates that appellant be afforded a new trial due to the admission of hearsay evidence indicative of the decedent's state of mind. He urges that although as a general rule evidence admitted pursuant to a well recognized exception to the common law hearsay rule contains no constitutional infirmity, in certain circumstances such evidence may be violative of the confrontation clause. Such a case is now before us, he contends, in that the hearsay testimony

[3] Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1, et seq.

had admissible and inadmissible elements which a jury could not distinguish. After carefully reviewing *Bruton* and other recent decisions of the United States Supreme Court on this issue,[4] we are unable to accept appellant's assertion that his trial violated the Sixth Amendment.

In *Bruton*, two codefendants were tried together at a joint trial and convicted by a jury of armed postal robbery. A postal inspector testified that Bruton's codefendant Evans orally confessed to him that Evans and Bruton committed the crime. Evans's conviction was later reversed, but the Court of Appeals for the Eighth Circuit affirmed Bruton's conviction because the trial judge had instructed the jury to disregard the hearsay testimony of Evans's confession in determining Bruton's guilt, even though the testimony was competent against Evans.

The United States Supreme Court reversed Bruton's conviction, stating: ". . . Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no instruction at all. . . ." Id. at 137, 88 S. Ct. at 1628 (citations omitted).

We believe *Bruton* to be inapposite in the instant case. Appellant was not tried at a joint trial, and the hearsay evidence introduced against him was in no way comparable to the ". . . powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant . . . ." Id. at 135-

---

4 See, e.g., *Dutton v. Evans*, 400 U.S. 74, 91 S. Ct. 210 (1970); *California v. Green*, 399 U.S. 149, 90 S. Ct. 1930 (1970); *Barber v. Page*, 390 U.S. 719, 88 S. Ct. 1318 (1968); *Brookhart v. Janis*, 384 U.S. 1, 86 S. Ct. 1245 (1966); *Douglas v. Alabama*, 380 U.S. 415, 85 S. Ct. 1074 (1965); *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065 (1965).

36, 88 S. Ct. at 1628. Furthermore, ". . . [t]here was not before us in *Bruton* 'any recognized exception to the hearsay rule,' and the Court was careful to emphasize that 'we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause.' 391 U.S. at 128 n. 3, 88 S. Ct. at 1624." *Dutton v. Evans,* 400 U.S. 74, 86, 91 S. Ct. 210, 218 (1970).[5]

We are fully aware that ". . . the Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right . . . made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas,* 380 U.S. 400, 403, 85 S. Ct. 1065, 1068 (1965). However, there are clearly different kinds of hearsay testimony possessed of varying degrees of prejudice. While the hearsay rule and the confrontation clause ". . . are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. . . . The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the

---

[5] There was no majority opinion in *Dutton v. Evans.* Mr. Justice STEWART announced the judgment of the Court and wrote an opinion in which the Chief Justice, Mr. Justice WHITE, and Mr. Justice BLACKMUN joined. Mr. Justice BLACKMUN filed a separate concurring opinion in which the Chief Justice joined. Justice HARLAN filed a concurring opinion. Mr. Justice MARSHALL filed a dissenting opinion, in which Mr. Justice BLACK, Mr. Justice DOUGLAS, and Mr. Justice BRENNAN joined. The quoted material is from Mr. Justice STEWART's opinion.

automatic conclusion that confrontation rights have been denied." *California v. Green,* 399 U.S. 149, 155-56, 90 S. Ct. 1930, 1933-34 (1970) (footnote and citations omitted.)[6]

Thus, the constitutional right to confrontation does not prohibit the introduction of hearsay evidence in all cases.[7] In *Pointer v. Texas,* supra, it was stated: "This Court has recognized the admissibility against an accused of dying declarations, . . . and of testimony of a deceased witness who has testified at a former trial, . . . There are other analogous situations which might not fall within the scope of the constitutional rule requiring confrontation of witnesses." 380 U.S. at 407, 85 S. Ct. at 1069-70 (citations omitted).

Our task must therefore be to reassess the hearsay testimony introduced against appellant in this case to determine whether it was ". . . at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give." *Bruton v. United States,* supra, at 138, 88 S. Ct. at 1629 (concurring opinion).

We discussed the challenged hearsay evidence at length in Thomas's direct appeal.[8] In our view, the

---

[6] For the origin and development of hearsay rules and the Confrontation Clause, see 5 Wigmore on Evidence, §1364; Note, Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials, 113 U. Pa. L. Rev. 741 (1965). See also, *Commonwealth v. Cheeks,* 429 Pa. 89, 99, 239 A. 2d 793, 798 (1968).

[7] See generally, Note, Confrontation and the Hearsay Rule, 75 Yale L. J. 1434 (1966).

[8] The contested evidence was summarized as follows in appellant's prior appeal.

"Thomas' second contention is that the trial court erred in admitting into evidence the testimony of five Commonwealth witnesses: (a) Margaret M. Smith, an Adelphia Hotel chambermaid, testified that on Friday, July 3, 1955—two days prior to the

evidence was admissible, for the declarations of the deceased indicated an existing intent or state of mind of the deceased-declarant, and ". . . since such declarations were made in a 'natural manner' and were material and relevant, their admission could be justified as an exception to the hearsay rule." *Commonwealth v. Thomas,* supra, at 170, 189 A. 2d at 260.

---

homicide——, as she entered deceased's room in the course of her duties, deceased was speaking on the telephone in a very excited manner and, shortly thereafter, deceased told Miss Smith she had been trying to contact a 'Sheriff in Miami'; (b) Edwin Thomas, a taxi driver requested by deceased to drive her to Florida, testified that en route to Washington, D.C. from Philadelphia, deceased told him she intended to settle in Florida and that 'she had some business that she wanted to get off her mind with Sheriff Thomas'; (c) James Jerdon, a chauffeur for a Philadelphia livery-hire firm, was requested by deceased to drive her to Virginia on Wednesday, July 6, 1955, that she telephoned him on Sunday, July 3—the day of the homicide—and cancelled the trip, stating: ' "We won't be able to go Wednesday. I was just talking to my Deputy Sheriff. We will have to go Thursday" '; (d) Albert Schuckerp, an Adelphia Hotel bellman, testified that he accompanied deceased to a Western Union office in Philadelphia on Friday, July 1,— two days before the homicide—where she directed Schuckerp to fill out a money order blank to be made payable to Robert Thomas and sent to the Dade County Sheriff's office, that the money order blank required the insertion of the sender's name but the deceased refused to sign her name thereto and, when Shuckerp questioned her refusal to sign, the deceased said: '. . . that Mr. Thomas . . . didn't want her name on the telegram'; (e) Adeline Walker, a personal friend of the deceased, testified that she and the deceased had planned to take a trip to Connecticut on Tuesday, July 5; that deceased called her on Sunday, July 3—the day of the homicide—and postponed the trip stating: '. . . she had sent Mr. Thomas a money order for $250 and they were up in an airplane going after Ridgeway [the object of deceased's amorous pursuit] with tommy guns' and 'that they feared for her safety, that they were going to send a bonded chauffeur to move her to another downtown hotel, that she wasn't to tell anyone or let anyone in her room or tell anyone where she was going, but she said she would call me as soon as she had gotten into this other hotel.' " *Commonwealth v. Thomas,* supra at 168-70, 189 A. 2d at 259-60.

Appellant contends that since the case against him consisted primarily of circumstantial evidence, these hearsay declarations were an integral part of the Commonwealth's case and so prejudicial as to invalidate his trial under the circumstances. We cannot agree.

This evidence was in no sense " 'crucial' " or " 'devastating' ",[9] unlike the hearsay evidence in the Supreme Court decisions holding a Sixth Amendment violation has occurred. The language used in *Dutton v. Evans,* supra, to distinguish those cases is particularly apt: ". . . [The challenged hearsay evidence] does not involve the use, or misuse, of a confession made in the coercive atmosphere of official interrogation, as did Douglas [v. Alabama, 380 U.S. 415, 85 S. Ct. 1074 (1965)], Brookhart [v. Janis, 384 U.S. 1, 86 S. Ct. 1245 (1966)], Bruton and Roberts. It does not involve any suggestion of prosecutorial misconduct or even negligence, as did Pointer, Douglas, and Barber [v. Page, 390 U.S. 719, 88 S. Ct. 1318 (1968)]. It does not involve the use by the prosecution of a paper transcript, as did Pointer, Brookhart and Barber. It does not involve a joint trial, as did Bruton and Roberts." Id. at 87, 91 S. Ct. at 219.

In *Dutton,* the Supreme Court was presented with a situation where one of defendant's coconspirators had made statements to a cellmate while awaiting to be arraigned. The cellmate was permitted to testify over objection that the coconspirator had stated to him that it was defendant's fault that the coconspirator was facing murder charges. The coconspirator was not called to testify. In spite of the latter's availability, the Supreme Court held that no Sixth Amendment violation occurred under those circumstances, as the cellmate was only one of twenty witnesses against defendant including another coconspirator who had turned state's evidence.

---

[9] This is the standard used by Mr. Justice STEWART in *Dutton v. Evans,* supra at 87, 91 S. Ct. at 219.

We likewise conclude that no constitutional error occurred in admitting the challenged testimony in the case now before us. The declarant was the victim, who was, of course, unavailable. In our view, the evidence was not so prejudicial that the jury could not properly evaluate it. [10] Furthermore, it is not without interest that, as we said in considering Thomas's direct appeal: ". . . If we view this testimony in the light most *unfavorable* to Thomas, such testimony, if believed, would point to a relationship between Thomas and the de-

---

[10] Our review of the record reveals that while the trial court had extensive consultations with counsel concerning the hearsay evidence and ruled that it was admissible for purposes of showing the declarant's intention, the court never clearly instructed the jury to this effect.

However, appellant is here attacking the hearsay evidence on the basis of *Bruton*, which held that even limiting instructions cannot cure the error of admitting certain types of hearsay evidence. We have indicated our view that the evidence here at issue was not of this nature, and appellant's Sixth Amendment rights were not violated.

We reviewed the charge of the court in petitioner's prior appeal and there stated: ". . . An examination of the record and the charge of the court in its entirety indicates clearly that this contention is without basis in fact. The trial court, in every respect, fairly, logically and in depth instructed the jury upon the applicable law, carefully and adequately reviewed the testimony both of the defense as well as the Commonwealth, and properly placed the determination of Thomas' guilt or innocence in the hands of the jury." *Commonwealth v. Thomas*, supra at 171, 189 A. 2d at 261.

We see no reason to depart from that statement. "Taking an appeal in criminal cases is not a game in which the appellant wins if he can show that the trial judge fell a few degrees short of perfection in the conduct of his trial. This court has consistently refused to reverse convictions of murder in the first degree, even with the death penalty imposed, for errors in the conduct of the trial or in the admission of evidence or in the judge's charge, when these errors did not deprive the defendant of the fundamentals of a fair trial." *Commonwealth v. Barnak*, 357 Pa. 391, 419, 54 A. 2d 865, 878 (1947).

ceased. That such relationship did exist was shown by other evidence—the admissibility of which is not questioned—presented by the Commonwealth." *Commonwealth v. Thomas,* supra, at 170-71, 189 A. 2d at 260-61.[11]

Having concluded no error occurred, we need not consider appellant's assertion that such error was not harmless under *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824 (1967) and *Commonwealth v. Pearson,* 427 Pa. 45, 233 A. 2d 552 (1967).

The remaining issue raised by appellant is whether the admission of evidence of a coconspirator's conviction at a separate trial violated his Sixth Amendment rights. We are referred to certain authorities for the proposition that the introduction of such evidence mandates a new trial. In the circumstances of the case before us, we are unpersuaded.[12]

We are in accord with the general rule of law that where two or more persons are jointly indicted for the same criminal offense but are tried separately, the fact that one defendant has pleaded guilty or is convicted is inadmissible as against the other, since competent and

---

[11] The evidence and its sources have been carefully described and analyzed in the previous direct appeals of appellant and his coconspirator. See, e.g., *Commonwealth v. Wilson,* supra at 592-97 nn. 1-17, 148 A. 2d at 237-39 nn. 1-17.

[12] Appellant cites *Leroy v. Government of Canal Zone,* 81 F. 2d. 914 (5th Cir. 1936) ; *United States v. Senior,* 274 F. 2d 613 (7th Cir. 1960) ; *Commonwealth v. Crow,* 303 Pa. 91, 154 Atl. 283 (1931). As we read *Crow,* that case stands, inter alia, for the proposition that a district attorney's reference in his closing address to the convictions of a defendant's confederate in a robbery was not sufficient error to justify disturbing on appeal the trial court's refusal of a motion for the withdrawal of a juror. The *Senior* case likewise did not grant relief; only *Leroy* reversed a judgment of sentence on this ground, with no discussion of the issues. As will appear, we believe such error should be evaluated in each case to determine whether it is harmless.

satisfactory evidence against one person charged with an offense is not necessarily so against another person charged with the same offense. See generally, 2 Wharton, Criminal Evidence §439 (12th ed. 1955); Annot., 48 A.L.R. 2d 1016.

The issue to be determined on appeal where evidence of a coconspirator's conviction has been admitted is whether the introduction of such evidence was sufficiently prejudicial to require a new trial. On reviewing the present record, we find no basis for the conclusion that the admission of such evidence in the instant case was prejudicial in light of the overwhelming evidence of appellant's guilt. We are convinced that any possible error on this point was certainly harmless.

Accordingly, the order of the Court of Common Pleas of Philadelphia dismissing appellant's PCHA petition is affirmed.

Mr. Justice COHEN took no part in the decision of this case.