Commonwealth *v.* Porter, Appellant.

154

156

Argued November 12, 1971. Before Jones, Eagen, O'Brien, Roberts and Pomeroy, JJ.

*Bruce W. Miller,* with him *David N. Savitt,* and *Silver, Miller & Silver,* for appellant.

*Carolyn E. Temin,* Assistant District Attorney, with her *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, October 4, 1972:

On the evening of November 21, 1969, 79-year-old Harry Specht, while walking to a grocery store in South Philadelphia, was attacked, kicked and beaten by a gang of youths, and left to die on the sidewalk. Appellant, Richard Porter, then 16 years of age, was one of four subsequently indicted for aggravated robbery and murder in connection with the incident. In May, 1970, a jury found Porter guilty of murder in the second degree but acquitted him of the charge of aggravated robbery. Post-trial motions were denied and appellant was sentenced to 6-20 years imprisonment. This appeal, raising four issues, followed. Because we decide them all adversely to appellant, the judgment of sentence below will be affirmed.

## I. Voluntariness of Confession

The Commonwealth introduced at trial an informal (unsigned) confession made by appellant on the day following the murder. On the morning of that day two members of the Juvenile Aid Division of the Philadelphia Police Department, acting on information obtained by the police as a result of interrogation of other suspects, had proceeded to the Porter home and stated to Mrs. Lillian Porter, appellant's mother, that

Richard was wanted for questioning in connection with a killing that had occurred the night before. Appellant also was told the reason for the investigation, and accompanied by his mother,[1] was taken to the police station. Mrs. Porter was left in the waiting room[2] while appellant was interrogated by a homicide detective. Full *Miranda* warnings[3] were read, whereupon appellant declined the services of a lawyer and proceeded to confess his complicity in the murder of Specht. The period of questioning was from 9:50 A.M. to 10:29 A.M. At the conclusion of the interrogation, the officer who had taken the statement encountered Mrs. Porter in the waiting room, and took her in to see her son. Richard repeated the substance of his story to his mother, who expressed displeasure that her son had confessed and endeavored unsuccessfully, to contact an attorney. She forbade Richard to make a formal, signed statement.

---

[1] The testimony is conflicting as to how Mrs. Porter got to the police station. The police officers stated that she declined their invitation to accompany her son in the police car; Mrs. Porter testified to the contrary.

[2] At the suppression hearing, one of the detectives (officer Verbrugghe) testified as follows: Q. (by Defendant's attorney) ". . . Why wasn't the mother consulted concerning the interrogation of her son?" A. "It's not my policy and not the policy of the Police Department to have parents of juveniles over the age of sixteen . . . if they are of tender years, yes, but not over the age of sixteen for the parents to be in on the initial interrogation".

Lillian Porter, appellant's mother, testified as follows: Q. "When you got to the police station . . . what did the police do with your son?" A. "They took us upstairs and they started in this room. You go through the gate and I started behind them with him and they told me to go have a seat on the side . . . I asked them would they let me go back there with him. I said, 'what's wrong?' but they wouldn't say nothing." Q. "They took your son into the room and you remained out in the waiting room, is that correct?" A. "That's right."

[3] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966).

Appellant admits that had his confession been elicited from an adult, its admissibility would not be subject to attack. His sole contention is that because he was a juvenile and because his mother was denied access to the interrogation room, his purported waiver of *Miranda* rights was ineffectual and the resultant confession involuntary. The same argument was recently considered and rejected by this Court in *Commonwealth v. Moses,* 446 Pa. 350, 287 A. 2d 131 (1971), where we said in pertinent part: "[I]t is argued that a 'juvenile lacks the ability' to fully understand and assert his constitutional rights and hence cannot effectively waive such rights without the advice of a more mature person. We emphatically reject such a prophylactic rule, particularly where a sixteen-year or seventeen-year-old is concerned . . . [T]o declare as matter of law that a sixteen-year-old, regardless of maturity and intelligence, is unable to fully understand when he is informed of his constitutional rights and may not by himself waive his right to counsel before being questioned by the police would be to ignore reality and the sophistication of the average sixteen-year-old in these days and times." 446 Pa. at 354.

The true approach to the issue of voluntariness and intelligent waiver, as reiterated in *Moses,* is a consideration of "all the attending circumstances . . . including the age, maturity and intelligence of the individual involved. . . . And where the accused is of tender years, the attending circumstances must be scrutinized with special care." Such scrutiny in this case shows the following: The appellant, then a suspect, was a sixteen-year-old boy in the eleventh grade of school, and characterized by his mother as intelligent. Mrs. Porter made only a single request to accompany her son during interrogation. Her desire to be present was apparently not shared by the boy, for he made no request

that his mother be with him nor objected to being questioned alone. Full *Miranda* warnings were given, and the responses, reproduced in the margin,[4] as to waiver of the rights to counsel and to remain silent were clear and unequivocal. The interrogation was brief, lasting but thirty-nine minutes. Porter appeared to the police officers normal in every respect, and not under the influence of alcohol or drugs. As he readily admits, appellant was subjected to neither physical nor mental coercion. These circumstances were for the suppression hearing judge as the trier of fact on the voluntariness issue. Nothing in this record indicates to us that he abused his discretion in finding a knowing and intelligent waiver, and we again decline to rule that as a

---

[4] At the pretrial suppression hearing, the interrogating officer, Verbrugghe, gave the following account of the colloquy following the reading of *Miranda* warnings to the defendant.

"Then I asked him the following questions:

" 'Do you understand that you have a right to keep quiet and do not have to say anything at all?' Q. Did he answer? A. He did. He answered, 'Yes, sir.'

" 'Do you understand that anything you say can and will be used against you? to which he answered, "Yes, sir, but I know what I did and I'm sorry." '

" 'Number 3: Do you want to remain silent?'

" 'Answer: No, sir, I'll tell.'

" 'Number 4: Do you understand you have a right to talk with a lawyer before we ask you any questions?' to which he answered, 'Yes, sir.'

" 'Number 5: Do you understand if you cannot afford to hire a lawyer and you want one, we will not ask you any questions until a lawyer is appointed for you free of charge?' to which he answered, 'Yes, sir.'

" 'Number 6: Do you want to talk with a lawyer at this time or to have a lawyer with you while we ask you questions?' to which he answered, 'No, sir.'

" 'Number 7: Are you willing to answer questions of your own free will without force or fear and without any threats or promises being made to you?' to which he answered, 'Yes, sir.' "

matter of law the resulting confession was rendered involuntary solely because appellant's mother was denied permission to be in the interrogation room. See and compare, *Commonwealth v. Harmon,* 440 Pa. 195, 269 A. 2d 744 (1970).[5]

## II. Extrajudicial Statements of Co-defendants

Appellant next contends that it was reversible error to allow two witnesses to testify, over objection, as to extrajudicial statements of others involved in the murder. The first witness stated that *all* the youths had related to him how "they beat up some white man", and the second testified that one boy said he had taken a dime from the victim's pocket.

The rule with reference to declarations of co-conspirators as exceptions to the hearsay rule, as long recognized in Pennsylvania and elsewhere, has most recently been reiterated by us as follows: "The declarations or acts of one co-conspirator made to third parties in the absence of his co-conspirator are admissible in evidence against *both* provided that such declarations [or acts] were made during the conspiracy and in furtherance of the common design: [citations omitted]." *Commonwealth v. Ellsworth,* 409 Pa. 505, 509, 187 A. 2d 640 (1963), quoting from *Commonwealth v. Wilson,* 394 Pa. 588, 607, 148 A. 2d 234 (1959). Cf. Rule 508, Vicarious Admissions, Model Code of Evidence, Am. Law Inst. 1942; McCormick, *Evidence,* §244, p. 521 (1954). See Note, Criminal Conspiracy, 72 Harv. L. Rev. 920, 984-990 (1959). The out-of-court statements here involved were admitted into evidence for the reason, presumably, that they qualified under this excep-

---

[5] We note in passing that at trial appellant's testimony of what occurred was almost identical to the statements made in his confession, and that had its admission been error, it may well have been harmless beyond a reasonable doubt.

tion,[6] and the trial court's rulings in this respect are not now disputed. Cf. *Commonwealth v. Ransom,* 446 Pa. 457, 463, 288 A. 2d 762 (1972). To allow the introduction of hearsay in criminal trials, however, may run afoul of the Sixth Amendment to the Constitution of the United States, which guarantees, *inter alia,* that the accused "shall enjoy the right . . . to be confronted with the witnesses against him . . .", a fundamental right made obligatory on the states by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926 (1965). The exceptions to the rule against hearsay do not necessarily, by virtue of being exceptions, obtain immunity from attack under the confrontation clause. *California v. Green,* 399 U.S. 149, 155-156, 26 L. Ed. 2d 489, 495-96 (1970).[7] The appellant contends that the extrajudicial statements described above violated his right to confront the declarants, and relies on *Bruton v. U.S.,* 391 U.S. 123, 20 L. Ed. 2d 476 (1968).

---

[6] The declarations of all the participants in the affair were made after the initial assault on the victim, but before they returned to administer the coup de grace. The conspiracy was thus a continuing one at the time of the statements. It is not clear how the statements could have been in furtherance of the conspiracy, but no objection on that score was made at trial nor on this appeal. The statement of the youth who told of taking a coin from the victim's person was, so far as the record before us shows, made after the collective criminal acts had terminated, and so would not qualify under the co-conspirator hearsay exception as applied in Pennsylvania. But see Model Code of Evidence, Rule 508(b), Comment (b), p. 251 (Am. Law Inst. 1942). The admission of this declaration was objected to, but for the reasons indicated in the text in discussing the confrontation clause, the error in allowing it to stand was harmless.

[7] For a discussion of the recent decisions of the United States Supreme Court interpreting the confrontation clause, see E. Griswold, "The Due Process Revolution and Confrontation", 119 U. of Pa. Law Rev. 711 (1971).

A similar challenge to hearsay evidence was considered and rejected in *Commonwealth v. Thomas,* 443 Pa. 234, 279 A. 2d 20 (1971). As in that case, so here we find the decision in *Bruton* to be inapposite. The distinctions made in the *Thomas* opinion are equally pertinent here: "We believe Bruton to be inapposite in the instant case. Appellant was not tried at a joint trial, and the hearsay evidence introduced against him was in no way comparable to the '. . . powerfully incriminating extra-judicial statements of a codefendant, who stands accused side-by-side with the defendant. . . .' Id. at 135-36, 88 S. Ct. at 1628. Furthermore, '. . . [t]here was not before us in Bruton "any recognized exception to the hearsay rule," and the Court was careful to emphasize that "we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." 391 U.S. at 128 n.3, 88 S. Ct. at 1624.' Dutton v. Evans, 400 U.S. 76, 86, 91 S. Ct. 210, 218 (1970)." 443 Pa. at 238, 239.

*Pointer v. Texas, supra,* is closer in point, for no joint trial of co-defendants was there involved. But the court there, as we construed its decision in *Thomas,* did not hold that the right to confrontation forbids the introduction of hearsay evidence in all cases. Employing the test advanced in Mr. Justice STEWART's concurring opinion in *Bruton,* we discerned our task to be, in the words of Mr. Justice ROBERTS' opinion, to "reassess" the hearsay testimony introduced against appellant "to determine whether it was '. . . at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give.' Bruton v. U.S., supra, at 138, 88 S. Ct. at 1629 (concurring opinion)." *Commonwealth v. Thomas, supra,* at 240. In *Commonwealth v. Ransom, supra,* we ruled that recognized hearsay ex-

ceptions do not present confrontation problems if the circumstances of their utterances guarantee sufficient "indicia of reliability". In so holding, we were relying upon another opinion by Mr. Justice STEWART, speaking for four members of the United States Supreme Court (there was no majority opinion) in *Dutton v. Evans*, 400 U.S. 74, 87, 27 L. Ed. 2d 213 (1970). Mr. Justice STEWART noted that the declarant's statement in that case was spontaneous and also against his penal interest. These attributes, said Mr. Justice STEWART, "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." 400 U.S. at 89. In *Commonwealth v. Ransom*, the co-conspirator's statement was held not to qualify under the Pennsylvania co-conspirator rule, since the robbery had been accomplished and the proceeds divided at the time the statements were made. Indeed, the statements were given to the police at a time when both accomplices were under arrest and in custody. The statements thus did not qualify as hearsay exceptions, and we had no occasion to explore the circumstances which would guarantee sufficient indicia of reliability under the test we announced.

In the case at bar, the testimony that *all* the youths admitted beating the deceased was merely cumulative, as was that in *Thomas* and also in *Dutton v. Evans, supra*. Appellant's complicity in the homicide was firmly established by appellant's out-of-court confession, his in-court testimony, and the testimony of two eyewitnesses who saw appellant strike the victim on the head with a wine bottle. To this may be added Porter's own confession to the witness who gave the testimony under review, that "all" the youths had admitted participating in the beating. The challenged testimony cannot, in this context, be categorized as "damaging" or "sus-

pect". In addition, as in *Dutton v. Evans, supra,* the statements here in question possessed the indicia of reliability which derived from being spontaneous and against the penal interest of the declarants.

We conclude, therefore, that the recognition of the hearsay exception did not here contravene the Sixth Amendment. Moreover, even were we to hold that the right to confrontation was violated, our review of the record indicates that the Commonwealth's case would not have appeared significantly less persuasive to the jury had the admissions of the other participants in the beating of Specht been excluded. Thus the admission into evidence of the statements was at most harmless error. *Schneble v. Florida,* 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345 (1972).

The statement by a non-witness that money, albeit only a dime, was taken from the person of the victim stands in different light. It could be characterized as "damaging" because, if believed, it was the only evidence establishing an aggravated robbery and thus murder in the first degree under the felony-murder rule. As it turned out, however, the introduction of the statement did not have damaging effect; the jury returned a verdict of acquittal on the aggravated robbery charge and of guilty of second degree murder only. We thus conclude that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705 (1967) ; *Commonwealth v. Pearson,* 427 Pa. 45, 233 A. 2d 552 (1967).

### III. The Reasonable Doubt Standard

Appellant challenges the accuracy of the charge to the jury on the standard of reasonable doubt as contained in the following passage:

"You will, upon coming upon the resolution of conflicts and contradictions in the testimony, it may be

that you will come upon *a piece of evidence or a piece of testimony or an inference or a deduction that you could make from that piece of testimony or evidence* that, when you look at it, it is equally balanced. Equally balanced. And, looking at it on one side it says, 'innocence'. And looking at it directly on the other side it says, 'Guilty'. But, it is equally balanced.

"Whenever on any evidence it is equally balanced, the presumption of innocence of the Defendant comes into play and the benefits therefore must be given to the Defendant, because if the evidence is equally balanced the Commonwealth has not proved its case beyond a reasonable doubt.

"Therefore, in the conduct of your duty to reconcile the evidence, if its ever equally balanced the Commonwealth, succinctly stated, has not proved its case upon that point, and the benefit of it is to be given to the Defendant." (Emphasis added.)

Were the above the only clarification of the reasonable doubt standard, appellant unquestionably would be entitled to a new trial. *Commonwealth v. Meas,* 415 Pa. 41, 202 A. 2d 74 (1964). A charge, however, must be judged in its entirety, not by reference to isolated portions. *Commonwealth v. Crosby,* 444 Pa. 17, 23-24, 279 A. 2d 73 (1971) ; *Commonwealth v. Butler,* 442 Pa. 30, 34, 272 A. 2d 916 (1971). In this case, the trial judge had already instructed the jury at considerable length on the presumption of innocence and the Commonwealth's burden of proof :

". . . From the beginning until the conclusion of your deliberations, the Defendant is presumed to be innocent.

"It is the burden of the Commonwealth of Pennsylvania to prove him guilty of each and every essential element of the charges brought against him beyond a reasonable doubt. The burden of the Commonwealth

to prove a person guilty beyond a reasonable doubt is a burden that remains upon the Commonwealth from the beginning until the end of the case. And, the burden of proof upon the Commonwealth never shfits from them. . . .

"A reasonable doubt is not some imaginary doubt. It is not some fanciful doubt. It is not a doubt invented by jurors wishing to avoid an unpleasant duty. But, it must be an honest doubt arising out of the evidence itself, the kind of a doubt that would cause an ordinary person—a reasonable person to be restrained from acting in a matter of importance in their [sic] own life. . . ."

Similar though shorter versions of this standard were repeated at other places in the charge. Appellant does not contend that this instruction was incorrect. He would have us hold, however, that when read in conjunction with the challenged portion, the jury was left with conflicting and irreconcilable standards of guilt, one permissible and the other impermissible.

Taken as a whole, the charge requires the jury, in order to convict the defendant, to find each and every *essential* element of the crime charged beyond a reasonable doubt, but allows facts which are not of the essence of the crime to be proved by a preponderance of the evidence. We cannot find that the acceptability of this particular mode of expression in a charge has been previously considered by Pennsylvania courts. Dean Wigmore, however, reviewed the authorities and case law and concluded: "It is generally and properly said that this measure of reasonable doubt need not be applied to the specific detailed facts, but only to the *whole issue*; and herein is given opportunity for much vain argument whether the strands of a cable or the links of a chain furnish the better simile for testing the measure of persuasion." Wigmore, *Evidence*, vol. IX, §2497, p. 324 (3d ed. 1940).

We are persuaded that the Wigmore view, i.e., the strands of a cable as opposed to the links of a chain, is the better one. To require a reasonable doubt standard for *all* evidence, even as to non-essentials, would permit the defendant to evade conviction by attacking the slightest circumstance in the Commonwealth's case, even where absence of the challenged evidence would not detract from an overall showing of guilt beyond a reasonable doubt.

## IV. Factual Inaccuracy in Charge

Appellant asserts, finally, that the trial judge inaccurately reviewed the testimony and that a new trial should therefore be ordered. The main assignment of error in this respect is that the statement admitting the taking of a dime from the deceased was attributed to appellant whereas in fact it was made by a co-conspirator. This mistake, however, was rendered innocuous both by the verdict of acquittal of aggravated robbery and by the judge's instruction, repeated several times, that the jurors should trust their own best recollection of the facts, not his. We have also reviewed the remainder of the charge in its entirety and conclude that the evidence was fairly and accurately summarized.

Judgment of sentence affirmed.

The former Mr. Chief Justice BELL and the former Mr. Justice BARBIERI took no part in the consideration or decision of this case.

Mr. Chief Justice JONES and Mr. Justice EAGEN concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent because I am unable to conclude that the confession admitted into evidence was voluntary. I am also impelled to note my disagreement with the

standard employed by the majority to determine wheth-
er hearsay statements admitted into evidence violated
the Confrontation Clause of the Sixth Amendment.

## I.

The majority holds voluntary a confession given by
this sixteen-year-old defendant, interrogated alone by
the police despite the boy's mother's request to accom-
pany her son during the interrogation. Less than two
years ago in *Commonwealth v. Harmon*, 440 Pa. 195,
269 A. 2d 744 (1970), this Court in an unanimous
opinion by Justice EAGEN granted an eighteen-year-old
defendant relief in precisely the same factual setting.
I cannot accede to the majority's sub silentio overrul-
ing of *Harmon*.

A comparison of the facts of the instant case and
*Harmon* convincingly demonstrate the error of the ma-
jority's result. In *Harmon* the eighteen-year-old de-
fendant confessed after interrogation, unaware that
his mother and two other adults had come to the police
station and requested to see him. This Court unani-
mously sustained the suppression of defendant's confes-
sion as involuntary. We there pointedly noted that the
police had "use[d] tactics in the securing of the chal-
lenged statement which we cannot condone. If for no
more than fairness and policy, the suppression order
should be affirmed." Id. at 199, 269 A. 2d at 746.[1]

Here the boy's mother made a demand, unheeded by
the police, that she be present during the police inter-
rogation of her sixteen-year-old son. Immediately up-
on learning that the boy had confessed she refused to

---

[1] Neither in *Harmon* nor in the instant case was there a spe-
cific request made by the defendant to have an adult present dur-
ing the interrogation. In *Harmon* the Court noted that the defend-
ant only "made repeated inquiries as to whether his mother or any-
one else was there to see him. . . ." Id. at 198, 269 A. 2d at 745.

allow him to sign a written statement. Here as in *Harmon*, once again the police "use[d] tactics in the securing of the challenged statement which we cannot condone." Here as in *Harmon*, the defendant is also entitled to relief.

The majority's result is in no way supported by our decision in *Commonwealth v. Moses*, 446 Pa. 350, 287 A. 2d 131 (1971).[2] The facts in *Moses* differed from those in *Harmon* and in the instant case in one significant fashion—in *Moses* *no request* was made by the sixteen-year-old defendant's adult guardians to be present during interrogation. That material factual difference makes the holding of *Moses* inapposite here. Nowhere in *Moses* did we give the slightest indication that our holding in *Harmon* was being in any way modified.

In my view, *Harmon*, when considered in light of constitutional standards, was correctly decided. Nothing since its decision has brought into question its vitality, on the contrary decisions from other respected jurisdictions only reaffirm its soundness. See, e.g., *People v. Burton*, 6 C. 3d 375, 491 P. 2d 793 (1971). I would reverse the judgment of sentence and grant a new trial on the authority of *Harmon*.

## II.

Hearsay testimony, consisting of statements by appellant and his accomplices that "they beat up some white man" was admitted into evidence without objection. The statements were assertedly made during an interval in the assault on the deceased. It is unclear

---

[2] In *Commonwealth v. Moses*, supra, a review of the relevant authorities persuaded me that a juvenile, absent the guidance of counsel or adult friend, is incapable of waiving his constitutional rights to remain silent and free counsel when necessary. *Commonwealth v. Moses*, 446 Pa. at 356, 287 A. 2d at 134 (1971) (dissenting opinion by ROBERTS, J., in which O'BRIEN, J., joined).

from the record what hearsay exception justified the admission of this testimony. The statements may have been properly admitted either under the spontaneous utterance[3] or the co-conspirator's[4] exception to the hearsay rule.

The majority however in my view erroneously adopts a portion of Mr. Justice STEWART'S concurring opinion[5] in *Bruton v. United States,* 391 U.S. 123, 88 S. Ct. 1620 (1968), as the standard for determining whether hearsay testimony admitted under exceptions to the hearsay rule satisfies the Confrontation Clause of the Sixth Amendment. In *Bruton,* the question facing the Supreme Court was whether the limiting instructions to the jury were sufficient to insure that the jury use the confession of a co-defendant solely to determine his guilt or innocence, not also the guilt or innocence of Bruton. Mr. Justice STEWART'S observations, made in the context of a case dealing with a joint trial and the effects of limiting instructions, are not constitutional authority for the question here in issue.[6]

---

[3] Henry, Pennsylvania Evidence §466 (1953) ; McCormick, Evidence §272 (1954).

[4] Henry, Pennsylvania Evidence §§442-44 (1953) ; see also Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L. Rev. 1378 (1972).

[5] Mr. Justice STEWART observed in his concurring opinion which was not joined by any of the Justices: "A basic premise of the Confrontation Clause, it seems to me, is that certain kinds of hearsay . . . are at once so damaging, so suspect, and yet so difficult to discount, that jurors cannot be trusted to give such evidence the minimal weight it logically deserves, *whatever* instructions the trial judge might give." *Bruton v. United States,* 391 U.S. 123, 138, 88 S. Ct. 1620, 1629 (1968) (emphasis in original) (citations omitted).

[6] The Supreme Court specifically noted in *Bruton*: "There is not before us . . . any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Con-

In several decisions since *Bruton,* the Supreme Court has developed the standards to be applied in determining whether testimony admitted under a well-recognized exception to the hearsay rule satisfies the Confrontation Clause. First, in *California v. Green,* 399 U.S. 149, 90 S. Ct. 1930 (1970), the Supreme Court held that the Confrontation Clause is not a codification of the hearsay rule. Id. at 155-56, 90 S. Ct. at 1933-34; *Dutton v. Evans,* 400 U.S. 74, 81-82, 91 S. Ct. 210, 216 (1970). In *Dutton v. Evans,* supra, the admission of a statement by a co-conspirator to a cellmate which implicated the accused was held not to violate the Sixth Amendment. The statement, admitted under Georgia's exception to the hearsay rule for declarations against penal interest, was proper because it "was spontaneous and it was against his penal interest to make it. These are *indicia of reliability* which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." Id. at 89, 91 S. Ct. at 220 (emphasis added).

Following these cases, we concluded in *Commonwealth v. Ransom,* 446 Pa. 457, 288 A. 2d 762 (1972): "Therefore, well-recognized exceptions to the hearsay rule supported by circumstances guaranteeing sufficient 'indicia of reliability' do not raise confrontation problems." Id. at 461, 288 A. 2d at 764.

The statements in question here were admissible under "well-recognized exceptions to the hearsay rule" which are supported by "indicia of reliability." The co-conspirator exception rests on considerations of trustworthiness because: "What one of the conspirators admits while the plot is afoot about the plan or the happenings in its execution, is said by one who has special knowledge and generally is against the declar-

---

frontation Clause." *Bruton v. United States,* 391 U.S. 123, 128 n.3, 88 S. Ct. 1620, 1623-24 n.3 (1968).

ant's interest." McCormick, Evidence §244 at 522 (1954). The spontaneous utterance exception likewise is founded on considerations of reliability: "The factor of special reliability is ... furnished by the excitement which suspends the powers of reflection and fabrication. ... The most important factor is the time element. If as is frequently the case, the declaration occurs while the startling event is still in progress, it is easy to find that excitement prompted the utterance." Id. 272 at 579-80.

The statements in question satisfied the requirements of the Confrontation Clause, not for the reasons stated by the majority, but because they were admissible under exceptions to the hearsay rule fortified by sufficient "indicia of reliability." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S. Ct. 210, 220 (1970); *Commonwealth v. Ransom*, 446 Pa. 457, 461, 288 A. 2d 762, 764 (1972).

Mr. Justice O'BRIEN joins in this dissent.