**Commonwealth v. Midouhas**

Before Beckert, Garb and Rufe, JJ.

*Stephen B. Harris,* for Commonwealth.
*William J. Carlin,* for defendant.

GARB, J., March 27, 1973.—Defendant was indicted, tried and convicted for violation of section 1404 of The Borough Code of February 1, 1966, P. L. (1965) 1656, 53 PS §46404, personal interests in contracts or purchases of the borough. His motions in arrest of judgment or for a new trial have been argued before the court en banc and are dismissed herein.

At all times relevant hereto defendant was a member and sometime president of Borough Council of the Borough of Bristol, Bucks County, Pa. On March 27, 1969, the Borough of Bristol entered into a contract with the Bucks County Redevelopment Authority for the purpose of effecting an urban renewal project in the borough known as the Lincoln Avenue Urban Renewal Project. The contract was entered into as a result of resolution of borough council at a time when defendant was president of borough council. The general purpose of the contract was for the redevelopment authority to secure a Federal grant for the purpose of rehabilitating the area of the borough encompassed within the redevelopment project. The total cost of the project was approximately $750,000, with the borough providing one-quarter of the amount of the funding in the form of cash and noncash grants in aid. The noncash grants in aid were to be comprised of project improvements such as streets, waterlines, sewers and recreational areas. Half of the borough contribution was to be made by the Department of Community Affairs of the State of Pennsylvania, with the result

that the borough had to contribute one-eighth of the total project cost. The one-eighth share to be contributed by the borough in cash amounted to $16,666, which was paid by the borough to the Bucks County Redevelopment Authority in the spring of 1969.

The Redevelopment Project was a multi-faceted one providing for a variety of modes of development of the area to be rehabilitated. Some properties were to be acquired outright, either by negotiation or condemnation, and then razed for the purposes of creating parks and open spaces or for conveyance to developers for the construction of middle-class housing. Other properties were not to be acquired at all but rather the owners were to be encouraged to improve and upgrade the properties themselves. The inducements to the owners were in the form of outright grants in aid which did not have to be repaid or low cost loans at the rate of three percent per annum for 20 years. If the owners of the latter category of property refused to make the improvements contemplated by the project, then those properties would be acquired and the improvements made by the redevelopment authority.

On June 11, 1970, defendant's wife took title to the premises located and situate at 1102 Wood Street, Bristol, Pa., which is located within the redevelopment project and was one of those properties to be improved by the owner thereof. It is agreed by the defense that although title was taken in the name of defendant's wife, the funds used for acquisition were either defendant's or joint ones and that he, in fact, had an equitable interest in the property. At the time of the acquisition of this property, defendant was a member of borough council and negotiations for finalization of the project were still in process between the

redevelopment authority and borough council. Some time thereafter, the redevelopment authority informed defendant that his ownership of this property constituted a conflict of interest which jeopardized the Federal funding and, as a result thereof, defendant divested himself of the property by virtue of a conveyance from himself and his wife, dated November 10, 1970. The terms of the divesture were such that defendant realized no profit from the purchase and sale of this property.

Defendant advances two contentions in support of his motions to which we will address ourselves ad seriatim. Defendant contends first of all that the Act of Assembly in question does not apply to the facts in this case and that, therefore, what he allegedly did was not in violation of the act. In relevant part, the act provides as follows:

"Except as otherwise provided in this act, no borough official either elected or appointed, who knows or who by the exercise of reasonable diligence could know, shall be interested to any appreciable degree either directly or indirectly in any purchase made or contract entered into or expenditure of money made by the borough or relating to the business of the borough, involving the expenditure by the borough of more than one thousand dollars ($1000) in any calendar year, . . ."

Clearly, defendant was an elected borough official at all relevant times and with this he takes no issue. It is his contention, however, that the mere purchase by him of a property located within the area to be redeveloped under the contract between the borough and the redevelopment authority does not constitute such activity as to render him criminally culpable.

It is obvious that the act is extremely broad in its

terms. The act requires first of all only that he be interested in a contract entered into by the borough and does not define the nature of that interest. He may have an interest in a contract entered into by the borough without necessarily being a contracting party: Commonwealth v. Bruno, 203 Pa. Superior Ct. 541 (1964), and Commonwealth v. Elliott, 75 Pitts. L. J. 735 (1927), affirmed Commonwealth ex rel. Elliott, 291 Pa. 98 (1927). The amounts involved are immaterial so long as he shall be interested to an appreciable degree, and his intention likewise is of no moment: Commonwealth ex rel. v. Egan, 234 Pa. 24 (1912). Obviously, whether or not he was aware of the proscription contained in this Act of Assembly is totally immaterial: Commonwealth ex rel. Whitehouse v. Harris, 248 Pa. 570 (1915). It is true that all of these aforesaid cases predated the amendment to the act under which defendant was indicted and convicted. However, it is clear that the effect of the amendment was to broaden rather than narrow the application of the act.

This last observation with regard to the application of the act is, in its own right, of some significance in construction of this act. Prior to the amendment of the act to its present form it provided that the interest of the borough official must be in a "contract for the sale or furnishing of any supplies or materials for the use of the borough or for any work to be done for such borough." By virtue of the amendment, the act was broadened to include not only the former language but also an interest in any appreciable degree "either directly or indirectly in any purchase made or contract entered into or expenditure of money made by the borough *or relating to the business of the borough."* (Italics supplied.) It should be noted that both the

First Class and Second Class Township Codes, in their comparable provisions, proscribe conduct as it was previously described in The Borough Code and before this amendment, and in the township codes the language has not been amended to broaden its application as was done in The Borough Code. See the Act of May 27, 1949, P. L. 1955, sec. 39, 53 PS §56811, and the Act of May 24, 1951, P. L. 370, sec. 9, 53 PS §65802.

Certainly, the contract between the borough and the redevelopment authority is one entered into by the borough; it is for the expenditure of money and it relates to the business of the borough. The amount of money spent of $16,666, obviously in excess of $1,000, was spent in one calendar year. We have no difficulty in finding that defendant was interested in this contract relating to the business of the borough by virtue of his ownership of this property by reason of which he was in a position to improve it and enhance its value by the derivation of the advantage of low cost loans or outright grants in aid. As previously stated, it is immaterial whether or not he made a profit or intended to or whether he had any corrupt motive whatsoever.

We are satisfied that the philosophy of statutes such as this one is to protect the integrity of the institutions of elected government. It is the public policy of this Commonwealth that a public official may not use his official power to further his own interests. A man cannot serve two masters at the same time and the public interest must not be jeopardized by the acts of a public official who has a direct pecuniary or personal or private interest which is, or may be, in conflict with the public interest: Eways v. Reading Parking Authority, 385 Pa. 592 (1956). It is not a

question of the consequences or legal effect upon the municipal transactions, but rather a matter of the status of defendant as an elected official of the borough. See Marshall v. Ellwood City Borough, 189 Pa. 348 (1899). It is just that which forms the gravamen of defendant's offense. In his position or status as a borough councilman, he may not be interested in any contract relating to the business of the borough. Perhaps it is a matter of preserving the integrity of Caesar's wife, public confidence in elected officials, and, therefore, the consequences of defendant's interest are irrelevant to the question of whether he projected himself into the proscribed status. The philosophy was best enunciated in Commonwealth v. Elliott, supra, wherein the court below stated:

"It should be said, however, that a man cannot serve two masters, and in the interest of a sound public policy it is wise to remove any temptation that may exist to use public office as a source of private profit."

We are satisfied that the activities of defendant in this case are within the penumbra of the act in question.

Defendant's second contention is that somehow we erred in our instructions to the jury regarding the question of whether defendant's activities must have been done "knowingly." No exceptions were taken to our instructions and, therefore, we believe that any objections which there may be have been waived: Commonwealth v. Zapata, 447 Pa. 322 (1972); Commonwealth v. Glover, 446 Pa. 492 (1972); and Commonwealth v. Pierce, 446 Pa. 479 (1972). In any event, considering the charge as a whole, as we must (Commonwealth v. Porter, 449 Pa. 153 (1972); Commonwealth v. Hawkins, 448 Pa. 206 (1972), and Commonwealth v. Fisher, 447 Pa. 405 (1972), we are

satisfied that the instructions were adequate and proper.

The act, in a later sentence from that quoted above, provides that: "Any official or appointee who shall knowingly violate the provisions of this section . . ." shall be guilty of violation thereof. We instructed the jury that before they may return a verdict of guilty they must be satisfied beyond a reasonable doubt that defendant knew, or by the exercise of reasonable diligence could know, that he was in a position of conflict of interest as that term is defined in the act and as we explained that term to them. The jury was likewise told that it was for them to determine whether or not the contract related to the business of the borough, and also whether or not there was an expenditure of more than $1,000 in any calendar year. The jury was likewise told that any official or appointee who shall knowingly commit the acts described and proscribed in the act itself shall be guilty. They were told that "knowingly" in this context meant with knowledge, meaning at the time that defendant did what he is alleged to have done that he knew that he had a conflict of interest. We think that these instructions were proper and appropriate within the context of the act itself and that there is no inconsistency within the act. The act provides that he can be in violation of same if he is interested to any appreciable degree in any contract relating to the business of the borough if he knows or by reasonable diligence could know of that. If he knowingly violates the provisions of this section, meaning that he has an interest in a contract relating to the business of the borough under such circumstances whereby he either knew or by reasonable diligence could know of the contract and of his interest, then culpability

would follow. These are consistent provisions and we think that we instructed the jury consistently with these provisions. Therefore, this contention of defendant must likewise fail.

For the foregoing reasons, we have determined that defendant's motions as in the nature of a motion for a new trial or an arrest of judgment shall be denied, dismissed and overruled and enter the following

## ORDER

And now, to wit, March 27, 1973, defendant's motions in arrest of judgment and for a new trial are hereby denied, dismissed and overruled and defendant is directed to appear before the court in Court Room 2 in the Courthouse, Doylestown, Pa., on April 6, 1973, at 10 a.m., for the imposition of sentence.