J-A05002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RYAN M. HAFFEY | : | |
| | : | |
| Appellant | : | No. 671 WDA 2024 |

Appeal from the Judgment of Sentence Entered June 5, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000937-2023

BEFORE:    MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: MARCH 25, 2025**

Ryan M. Haffey (Appellant) appeals from the judgment of sentence entered following his nonjury convictions of driving under the influence of alcohol (DUI) – general impairment, DUI – high rate, driving on roadways laned for traffic, and careless driving.[1]  We affirm.

On December 2, 2022, Pennsylvania State Police (PSP) Trooper Adam Wassell (Trooper Wassell) conducted a traffic stop of Appellant's vehicle.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (b); 3309(1); 3714(a).

Following a hearing on Appellant's suppression motion, the trial court[2] made

the following findings of fact concerning the traffic stop:

1. Trooper [] Wassell has been employed by the [PSP] for approximately 25 years. He has received training regarding DUIs.

2. Trooper Wassell was on patrol on December 2, 2022 ….

3. At approximately 1[:00] a.m., [Trooper Wassell] was traveling west on [] 38th Street in his marked cruiser. At this time, [Trooper Wassell] saw a vehicle (which [Appellant] was driving) pull out of [the] parking lot of a bar called Rack n' Roll[ (the bar),] and head east towards Trooper Wassell's vehicle.

4. The portion of 38th Street where this occurred has three lanes, including a middle turning lane.

5. Trooper Wassell saw [Appellant's] vehicle cross the center yellow lane (into the middle turning lane) without using a turn signal.

6. Trooper Wassell then turned and followed the vehicle for approximately 1800 feet. [Trooper Wassell] observed [Appellant's] vehicle cross the yellow line three or four times, as well as cross the white fog line.

7. Trooper Wassell also observed that the vehicle signaled for a left turn, but did not turn immediately.

8. Trooper Wassell then initiated a traffic stop.

9. When Trooper Wassell approached [Appellant's] vehicle, he could smell alcohol. [Trooper Wassell] also noticed [Appellant] had slurred speech.

10. Trooper Wassell asked [Appellant] if he had anything to drink, and [Appellant] replied he had two [alcoholic] drinks – one at home and one at the bar. [Appellant] also said he lived nearby[,] and was dropping off keys to a friend at the bar.

---

[2] The Honorable John J. Mead presided over Appellant's relevant court proceedings.

11.    Trooper Wassell then asked [Appellant] to step out of the vehicle.    Trooper Wassell performed … the [horizontal gaze nystagmus (HGN)] test[], and a preliminary breath test (PBT). The [PBT] indicated [Appellant] had alcohol in his system.

12.    Trooper Wassell testified he did not perform further field sobriety tests for safety reasons.  Specifically, the ground was on an incline, it was cold out, and there were cars passing on 38th Street.

13.    Based on the results of the [HGN test and PBT], Trooper Wassell arrested [Appellant] for DUI.

14.    [Trooper Wassell's mobile video recording (MVR)] was played in [c]ourt ….   The MVR showed [Appellant's] vehicle crossing into the center travel lane several times.  It also showed [Appellant] turning on his left turn signal but not turning before he was stopped by Trooper Wassell.

15.    [Appellant] testified at the [suppression] hearing that he normally "hugs" the middle turning lane because of possible ice on the side of the road, as well as bicycles and pedestrians. [Appellant] also testified he put his turn signal on early, but he always signals a turn "way before I was going to turn" in that area. [Appellant] admitted he may have touched the turning lane a couple of times.

Trial Court Opinion (Suppression), 1/3/24, at 1-2 (footnote omitted).

After taking Appellant into custody, Trooper Wassell transported Appellant to the PSP barracks to administer a chemical breath test.  N.T. (Suppression Hearing), 12/5/23, at 10.  Appellant executed a DL-26 chemical warnings form and consented to the breath test.  *Id.*  The breath test revealed that Appellant had a blood alcohol content (BAC) of 0.132%.  *Id.*; *see also* N.T. (Nonjury Trial), 4/24/24, at 16.

On January 4, 2023, Trooper Wassell charged Appellant with the above-described charges. On August 15, 2023, Appellant filed an omnibus pretrial motion to suppress "any evidence subsequent to the [traffic] stop[,] as [Trooper Wassell] lacked reasonable suspicion or probable cause to initiate the stop of [Appellant's] vehicle." Suppression Motion, 8/15/23, ¶ 9.[3]

The matter proceeded to a suppression hearing on December 5, 2023. The Commonwealth called Trooper Wassell as its sole witness. Appellant testified on his own behalf. On January 3, 2024, the trial court authored an opinion and order denying Appellant's suppression motion.

The matter proceeded to a nonjury trial on April 24, 2024. Pertinently, Appellant objected to the admission of Commonwealth's Exhibit 1, which included, *inter alia*, a chemical breath test report (report)[4] and a certificate of breath testing device accuracy (certificate).[5] N.T., 4/24/24, at 13. Appellant argued that the trial court could not accept the report into evidence,

---

[3] Charbel G. Latouf, Esquire (defense counsel), represented Appellant at all court proceedings, and in the instant appeal.

[4] Although Trooper Wassell authored the report, Trooper Wassell's partner, Trooper William Bell (Trooper Bell), performed the chemical breath test on Appellant. **See** N.T., 4/24/24, at 47. The report identifies the device used to test Appellant's BAC as an Intoxilyzer 9000. **See** Commonwealth's Exhibit 1 (report).

[5] Trooper Christopher Weber (Trooper Weber) certified the breath testing device's accuracy. **See** N.T., 4/24/24, at 47; **see also** Commonwealth Exhibit 1 (certificate).

- 4 -

because a portion of the text was illegible. *Id.* (defense counsel stating, "I object first and foremost to the [] report, because it's nonlegible [*sic*]. … [T]imes of the first two tests and readings are not legible."). Appellant further argued that the entirety of Commonwealth's Exhibit 1 was inadmissible due to a lack of foundation, and as hearsay. *Id.* at 14. The trial court permitted Trooper Wassell to supplement the illegible text through his testimony,[6] and admitted Commonwealth's Exhibit 1 pursuant to the business records exception to the hearsay rule. *Id.* at 50. During closing argument, Appellant argued for the first time that the breath test procedures were "not valid" because the Commonwealth adduced no evidence that Trooper Wassell conducted a simulator test (discussed *infra*) to ensure the accuracy of Appellant's breath test results. *Id.* at 63.

At the conclusion of trial, the trial court took the matter under advisement. On April 26, 2024, the trial court convicted Appellant of all charges. On June 5, 2024, the trial court sentenced Appellant to six months' probation for DUI – high rate, the first thirty days of which Appellant was to serve on electronic monitoring.[7] The trial court additionally imposed $800 in

---

[6] Concerning the illegible text, Trooper Wassell testified, "I always put that in my [police] report. So I have the exact times each test was given, what the results [were], and then what the final results [were]. So if I can read that, you can understand the exact times." N.T. (Nonjury Trial), 4/24/24, at 15.

[7] The trial court determined that Appellant's DUI – general impairment conviction merged into his DUI – high rate conviction for sentencing purposes.

fines for the summary offenses. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues in his Pa.R.A.P. 2116 statement of questions involved:

> (1) Whether the trial court erred, as a matter of law, or abused its discretion[,] by failing to grant Appellant's motion for suppression of evidence when it found that [] Trooper[ Wassell's] stop of Appellant's vehicle[,] as well as Appellant's arrest, was based on probable cause[?]
>
> (2) Whether the trial court erred, as a matter of law, or abused its discretion[,] when it found Appellant guilty of violating 75 Pa.C.S.A[. §] 3802(a)(1) & (b), 75 Pa.C.S.A. § 3714(a), as well as 75 Pa.C.S.A. § 3309(1), based on insufficient evidence[?]

Appellant's Brief at 5 (some capitalization modified).[8]

In his brief, however, Appellant argues the following five issues: that the trial court erred by finding 1) Trooper Wassell's traffic stop of Appellant's vehicle was supported by probable cause or reasonable suspicion; 2) Appellant's arrest was supported by probable cause; 3) Commonwealth's Exhibit 1 was admissible pursuant to the business records exception to the hearsay rule; 4) the report was admissible notwithstanding the fact that a portion of its text was illegible; and 5) the evidence was sufficient to support all of Appellant's convictions. Appellant's Brief at 18, 26, 29-30.

---

[8] The Commonwealth did not file a brief.

In his first two issues, Appellant challenges the trial court's denial of his suppression motion. "Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Dewald*, 317 A.3d 1020, 1030 (Pa. Super. 2024) (citation and brackets omitted). "We are bound by the facts found by the trial court so long as they are supported by the record, but we review its legal conclusions *de novo*." *Commonwealth v. Rivera*, 316 A.3d 1026, 1031 (Pa. Super. 2024) (citation omitted). "Our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." *Commonwealth v. Tillery*, 249 A.3d 278, 281 (Pa. Super. 2021) (citations omitted).

"Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." *Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citation omitted). "[I]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Ochoa*, 304 A.3d 390, 396 (Pa. Super. 2023) (citation and brackets omitted). "The suppression court is free to believe all, some or none of the evidence presented at the suppression

hearing." **Commonwealth v. Byrd**, 185 A.3d 1015, 1019 (Pa. Super. 2018) (citation omitted).

Further, where a defendant files a suppression motion, "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights." Pa.R.Crim.P. 581(H); **see also id.**, Comment (stating that the standard of proof is a preponderance of the evidence).

Appellant first argues that the evidence presented at his suppression hearing showed that "Appellant drove as nearly as practicable entirely within a single lane for a quarter of a mile while [] Trooper [Wassell] was tailing him." Appellant's Brief at 23. Appellant claims that he "intentionally drove closer to the lane divider[,] as the side of the roadway was snowy and icy." **Id.** at 23-24. Thus, Appellant maintains, he did not violate Motor Vehicle Code (MVC) Section 3309 (Driving on roadways laned for traffic), the offense for which Trooper Wassell stopped Appellant. **Id.** at 22.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and seizures. **See Commonwealth v. Thompson**, 289 A.3d 1104, 1107 (Pa. Super. 2023). A traffic stop constitutes a "seizure" within this framework. **See Commonwealth v. Malloy**, 257 A.3d 142, 147 (Pa. Super. 2021).

The requisite cause required for law enforcement to initiate a traffic stop is settled:

> The quantum of cause needed to stop a vehicle turns on whether the stop can serve a stated investigatory purpose. Where further investigation is needed, *e.g.*, a stop for suspected DUI, an officer needs reasonable suspicion to initiate a traffic stop. Where further investigation would provide no additional information, *e.g.*, a stop for an obscured license plate, an officer needs probable cause.
>
> Probable cause for a search or seizure is a practical, non-technical concept that depends on the totality of the circumstances. In order for a traffic stop to be justified, a police officer must have probable cause to believe that a violation of the [MVC] or regulations has taken place. The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the [MVC]. Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference.

*Commonwealth v. Cahill*, 324 A.3d 516, 523 (Pa. Super. 2024) (quotation marks, citations, and one paragraph break omitted).

Here, Trooper Wassell testified that he initiated a traffic stop of Appellant's vehicle for violations of MVC Section 3309.[9] **See** N.T., 12/5/23, at 5 (Trooper Wassell testifying Appellant's vehicle's "two driver-side tires were over the yellow single line without a turn signal on[,] coming towards me[,] so it … looked like [Appellant's vehicle] was swerving into that center lane without a turn signal on and not attempting to turn."); *id.* at 6 (Trooper Wassell testifying he observed Appellant's vehicle deviate from its lane of travel "on three or four occasions").

---

[9] Trooper Wassell did not testify at the suppression hearing that he suspected Appellant of driving under the influence of alcohol or a controlled substance before initiating the traffic stop.

Motor Vehicle Code Section 3309 provides, in relevant part:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

**(2) Three lane roadways.--**Upon a roadway which is divided into three lanes and provides for two-way movement of traffic, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle traveling in the same direction when the center lane is clear of traffic within a safe distance, or in preparation for making a left turn, or where the center lane is allocated exclusively to traffic moving in the same direction that the vehicle is proceeding and the allocation is designated by official traffic-control devices.

75 Pa.C.S.A. § 3309(1)-(2).

Where there is "no express indication that [law enforcement] stopped [a defendant] in order to conduct additional investigations into a DUI or other impairments of his ability to drive safely[,] … **a showing of probable cause [is] necessary to justify [a traffic stop] for a violation of [MVC S]ection 3309**." *Commonwealth v. Landis*, 89 A.3d 694, 703 (Pa. Super. 2014) (citations omitted; emphasis added).

Instantly, in its opinion and order denying Appellant's suppression motion, the trial court considered and rejected Appellant's first claim:

Trooper Wassell witnessed [Appellant] pull out of [the] bar parking lot at 1[:00] a.m. He then saw the vehicle cross the line into the turning lane as [Appellant] headed towards Trooper Wassel's vehicle (also visible on the MVR). Thereafter, Trooper Wassell

- 10 -

turned around and followed [Appellant], and saw him crossing the lines three or four times. [Trooper Wassel] also observed [Appellant] turning on his left turn signal and not turning. Thus, Trooper Wassell had probable cause to stop [Appellant] for a traffic violation ….

Trial Court Opinion (Suppression), 1/3/24, at 3.

Upon review, the trial court's factual findings are supported by the record, and its legal conclusions are sound. *See Dewald*, 317 A.3d at 1030. At the suppression hearing, Trooper Wassell testified that he initially observed Appellant's vehicle swerve into a center turning lane without signaling, and without attempting to turn. *See* N.T., 12/5/23, at 5. For approximately one-third mile, Trooper Wassell followed Appellant, and observed Appellant "on three or four occasions cross the yellow line, a white turn line at one point[,] and he never turned into the turning lane." *Id.* at 6; *see also id.* (Trooper Wassell testifying that he followed Appellant for "approximately 1,788 feet before the initial stop.").

Based upon this evidence, we agree with the trial court that Trooper Wassell had probable cause to initiate a traffic stop for violation of MVC Section 3309. *See Commonwealth v. Cephus*, 208 A.3d 1096, 1099-1100 (Pa. Super. 2019) (finding probable cause where law enforcement witnessed the defendant's vehicle leave the lane of travel four times in a brief period of time); *see also Commonwealth v. Spahr*, 462 MDA 2024 (Pa. Super. 2024) (unpublished memorandum at 9) (finding that even if the defendant had not waived his suppression challenge, law enforcement's testimony that the

- 11 -

defendant's vehicle crossed "the double yellow line at least three times" was sufficient for conviction of MVC Section 3309);[10] ***Commonwealth v. Stultz***, 114 A.3d 865, 883 (Pa. Super. 2015) (probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed."). Appellant's first issue merits no relief.

In his second issue, Appellant argues the trial court erred by determining that Trooper Wassell had probable cause to arrest Appellant for DUI. The crux of Appellant's argument is that "the Commonwealth simply failed to present any results of any field sobriety tests." Appellant's Brief at 26. Appellant further asks this Court to discount Trooper Wassell's testimony that Appellant's driving was erratic. ***Id.*** at 28.

Concerning probable cause to arrest, we have recently reiterated:

To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested. Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, **we require only a probability, and not a *prima facie* showing, of criminal activity**. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent,

---

[10] Unpublished non-precedential memorandum decisions of this Court, filed after May 1, 2019, may be considered for their persuasive authority. ***See*** Pa.R.A.P. 126(b).

reasonable, cautious police officer guided by experience and training.

*Commonwealth v. Sears*, 311 A.3d 34, 39 (Pa. Super. 2024) (quotation marks and citations omitted; emphasis added). We have further observed that "failing [field sobriety] tests is not a requirement for a determination of probable cause." *Commonwealth v. Salter*, 121 A.3d 987, 997 (Pa. Super. 2015) (citation omitted).

Here, the trial court found the following significant in determining that Trooper Wassell had probable cause to arrest Appellant for DUI:

> Trooper Wassell knew the following before he arrested [Appellant]: (1) [Appellant] pulled out of [the] bar parking lot at 1[:00] a.m.; (2) [Appellant's] vehicle was continually crossing into the center lane; (3) [Appellant] activated his turn signal and did not turn; (4) when [Appellant] was stopped, Trooper Wassell smelled alcohol and noticed slurred speech; (5) [Appellant] admitted drinking [two alcoholic] drinks; and (6) the PBT [] indicated [Appellant] had alcohol in his system.

Trial Court Opinion (Suppression), 1/3/24, at 3-4.

The trial court's factual findings are supported by the record, and its legal conclusions are sound. *See Dewald*, 317 A.3d at 1030. Based upon the totality of the circumstances, Trooper Wassell's observations of Appellant's erratic driving, odor of alcohol, slurred speech, as well as Appellant's admission to consuming alcoholic beverages, supplied Trooper Wassell with "a probability … of criminal activity." *Sears*, 311 A.3d at 39; *see also Commonwealth v. Slonaker*, 795 A.2d 397, 402 (Pa. Super. 2002) (finding probable cause to arrest based on the trooper's observations of erratic driving,

glassy and bloodshot eyes, and odor of alcohol). Further, the trial court acted within its discretion when it credited the testimony of Trooper Wassell, and discounted Appellant's testimony. *See Ochoa*, 304 A.3d at 396 (stating it is the trial court's "sole province as factfinder to pass on the credibility of witnesses …."). Appellant's second issue does not entitle him to relief.

In his third and fourth issues, Appellant challenges the trial court's admission of the report and the certificate.[11] Our review of a trial court's evidentiary ruling is well settled:

> The trial court's decision to admit evidence is subject to review for an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Carter*, 320 A.3d 140, 147 (Pa. Super. 2024) (citation omitted).

In his third issue, Appellant argues that the trial court erred by admitting the report and certificate pursuant to the business records exception to the rule against hearsay. Appellant's Brief at 31. Appellant notes that "alcohol breath tests shall be conducted by a certified breath test operator." *Id.* at 32 (citing 67 Pa. Code § 77.24(b)). Appellant contends that "[t]he

---

[11] Appellant does not challenge the admission of this evidence as violative of the Confrontation Clause. *See Commonwealth v. Thomas*, 279 A.2d 20, 23 (Pa. 1971) ("[M]erely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.").

Commonwealth failed to provide an original copy, a business records custodian to authenticate, or present the witness who performed the test." *Id.* at 31-32. In the absence of the above, Appellant argues, the Commonwealth failed to establish the admissibility of the report and certificate. *Id.*

"Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." *Commonwealth v. Rivera*, 238 A.3d 482, 492 (Pa. 2020); *see also* Pa.R.E. 802 (rule against hearsay). "Hearsay is a statement the declarant does not make while testifying at the current trial or hearing [and] is offered in evidence to prove the truth of the matter asserted." *Commonwealth v. Fitzpatrick*, 255 A.3d 452, 471 (Pa. 2021) (citing Pa.R.E. 801(c)(1)-(2) (ellipses and quotation marks omitted)).

The Pennsylvania Rules of Evidence except from the rule against hearsay the following evidence:

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:

(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Additionally, the Uniform Business Records as Evidence Act provides:

**(b) General rule.--**A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108(b).

"To satisfy the business records exception[,] the testifying witness need not be the custodian of the record or have personal knowledge of the facts reported in the business record." ***Commonwealth v. Nabried***, 327 A.3d 315, 322 (Pa. Super. 2024) (citation omitted).

[A]s long as the authenticating witness can provide sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness of the business records of a company, a sufficient basis is provided to offset the hearsay character of the evidence.

***Id.*** (quotation marks, brackets, and citation omitted).

MVC Section 1547(c)(1) prescribes the means by which chemical breath tests are rendered admissible evidence:

- 16 -

**(c) Test results admissible in evidence.--**In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

> **(1)** Chemical tests of breath shall be performed on devices approved by the Department of Health using procedures prescribed jointly by regulations of the Departments of Health and Transportation. Devices shall have been calibrated and tested for accuracy within a period of time and in a manner specified by regulations of the Departments of Health and Transportation. For purposes of breath testing, a qualified person means a person who has fulfilled the training requirement in the use of the equipment in a training program approved by the Departments of Health and Transportation. **A certificate or log showing that a device was calibrated and tested for accuracy and that the device was accurate shall be presumptive evidence of those facts in every proceeding in which a violation of this title is charged**.

75 Pa.C.S.A. § 1547(c)(1) (emphasis added).

Significantly,

> [o]nce the Commonwealth present[s] evidence the [chemical breath] test was performed by a "qualified person," on an "approved" device, which had been calibrated and inspected for accuracy within the period of time and in a manner in conformity with relevant regulations, the trial court properly admit[s] the test results.

***Commonwealth v. Dyarman***, 73 A.3d 565, 570 (Pa. 2013) (citation omitted).

At Appellant's nonjury trial, Trooper Wassell testified as follows concerning the PSP's "standard protocol" involving certificates of breath testing accuracy:

> [PSP] Trooper Weber, he's a maintenance operator. There[ are] several [maintenance operators] throughout the barracks. And they conduct these [chemical breath testing accuracy] tests. They do all these tests. … [T]his paperwork goes onto a hard drive. Trooper Weber has all the … official copies. These go onto the hard drive, and we can take these right from our troop file and just attach[] them to our reports. That's how everything's done every time. []
>
> So we have actual copies. [] We have certified copies, signed. But these copies -- to save from everybody shuffling through and trying to take these copies, everything's attached to the troop file. We take these. These are all available. It's all organized by month. It's all organized by operators and their certificates.
>
> I myself am [] certified to run this [breath testing device]. But how we do things is my partner[, Trooper Bell,] runs the [breath testing device], or I run the [breath testing device]. [Trooper Bell] prints, or I print. … [W]e just kind of flip-flop to try to get the process moving to get the [d]efendant out. Trooper Weber does these[ certificates of breath testing device accuracy]. He has the official copies of everything, and he just attaches these to a file so that we can upload a report and constantly share rather than taking the originals ….
>
> ….
>
> … Everyone has court all the time when you're on DUI's. No one person can have that exact copy at all times. Now, Trooper Weber does have that. It's filed away, and it's … in a folder. But he's the only one that gets those if we actually need the actual copy.
>
> … Everything you hear is dated. It's signed. It's ready to go. [The breath test device Trooper Weber used in this case] was in operation at that time.

N.T., 4/24/24, at 48-49.

Here, Trooper Wassell's testimony "provide[d] sufficient information relating to the preparation and maintenance of the records to justify a presumption of trustworthiness" concerning the certificate. *Nabried*, 327 A.3d at 322. Trooper Wassell testified as to how the certificate was generated, how it was stored, how it was accessed, and how it is regularly used in the course of preparing for court proceedings. *See* N.T., 4/24/24, at 48-49; *see also* Pa.R.E. 803(6). In view of this testimony, the trial court did not abuse its discretion in admitting the certificate pursuant to the business records exception. *See Carter*, 320 A.3d at 147.

We likewise conclude the trial court did not abuse its discretion in admitting the report, albeit on a different basis. *See Commonwealth v. Martin*, 205 A.3d 1247, 1248 n.3 (Pa. Super. 2019) ("[A]n appellate court is not bound by the rationale of the trial court and may affirm on any basis if the record supports it." (citation omitted)). As set forth above, where the Commonwealth elicits evidence that a chemical breath test was conducted "by a 'qualified person,' on an 'approved' device, which has been calibrated and inspected for accuracy within the period of time and in a manner in conformity with relevant regulations," the chemical breath test report is admissible as evidence. *Dyarman*, 73 A.3d at 570.

Here, Trooper Bell conducted Appellant's chemical breath test, and Trooper Wassell authored the report. *See* N.T., 4/24/24, at 47; Exhibit 1

(report). The evidence adduced at trial established that **both** troopers are qualified to operate the chemical breath test device used in this case. **See** N.T., 4/24/24, at 48 (Trooper Wassell testifying that he is certified to operate the chemical breath testing device); Exhibit 1 (Trooper Bell's Certificate of Training). The evidence further established that the Intoxilyzer 9000 (the device utilized to test Appellant's breath) was an approved device pursuant to the Pennsylvania Bulletin. **See** Exhibit 1 (48 Pa.B. 3011). Finally, the certificate, which we have already determined was properly admitted pursuant to the business records exception, established that the breath testing device used in this case "was tested for accuracy, and the degree of accuracy is within the range specified in the Department of Health and Department of Transportation regulations promulgated under [MVC] Section 1547(c) …." Exhibit 1 (certificate).

As the Commonwealth presented evidence consistent with the admissibility criteria set forth in MVC Section 1547(c) and **Dyarman**, **supra**, the trial court did not abuse its discretion in admitting the report. Appellant's third issue merits no relief.

In his fourth issue, Appellant challenges admission of the report based on its partial illegibility.[12] Appellant's Brief at 32. Appellant argues that

---

[12] In its Rule 1925 opinion, the trial court states that "the record demonstrates that the [] report was not illegible." Trial Court Opinion, 7/23/24, at 3. However, based on Trooper Wassell's testimony, and our review of the report

*(Footnote Continued Next Page)*

because the report was not identical to the original document, it was not admissible as a business record. *Id.* (citing 42 Pa.C.S.A. § 6109); *see also id.* at 33 (Appellant arguing that "[w]ithout a legible chemical test report, the [trial c]ourt can't rely on the business records exception.").

Section 6109 of the Uniform Photographic Copies of Business and Public Records as Evidence Act (UPCBPREA), provides, in pertinent part, as follows:

> **(b) General rule.--**If any business institution, member of a profession or calling, or any department or agency of government, in the regular course of business or activity, has kept or recorded any memorandum, writing, entry, print, representation, or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of the same to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic, or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed, in the regular course of business, unless its preservation is required by law. **Any such reproduction in order to comply with this section must accurately reproduce all lines and markings which appear on the original**. Such reproduction, when satisfactorily identified, is as admissible in evidence as the original itself in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of such reproduction is likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of the tribunal. The introduction of a reproduced record, enlargement or facsimile does not preclude admission of the original.

42 Pa.C.S.A. § 6109(b) (emphasis added).

---

in the certified record, we disagree to the extent that a portion of the text is illegible. *See* N.T., 4/24/24, at 45 (Trooper Wassell agreeing that a portion of the report is not legible, and stating, "It looks like it's been photocopied too much."); *see also* Exhibit 1 (report).

At trial, Appellant objected to admission of the report because the "times of the first two tests and readings are not legible."  N.T., 4/24/24, at 13. Appellant further indicated that he requested a legible copy from the Commonwealth, but the Commonwealth told him, "[T]his is all they have." *Id.* at 14.[13]   The trial court thereafter permitted Trooper Wassell to supplement the written report with his testimony:

> So every time I … type a report that does the chemical testing, I put the … exact times in.  And then once this chemical test is printed, [Appellant was] given a copy.  He has his own copy. Whether he gave that to [defense counsel], I don't know.  But he gets a copy.  I get a copy for my report.  He should have had a copy with all the legible times.
>
> ….
>
> … So the 20-minute observation period started [at 1:03 a.m].  The first breath sample was done at [1:43 a.m.,] and [Appellant] registered a [BAC] of [] 0.132 percent.  A second breath test was done at [1:44 a.m.], one minute later, and [Appellant] registered as 0.138 percent.  As I explained, the machine takes the lesser of the two BAC's.  So [Appellant] successfully completed both breath samples and registered a BAC of [] 0.132 percent.

N.T., 4/24/24, at 16.

As we previously discussed, the evidence presented relative to the report satisfied the admissibility criteria set forth in MVC Section 1547(c) and **Dyarman**, **supra**.  Therefore, the report's failure to comply with UPCBPREA Section 6109(b)'s requirement that a photographic copy of a business record

---

[13] The docket entries disclose that Appellant did not file a formal request for discovery or motion to compel discovery.

- 22 -

"accurately reproduce all lines and markings which appear on the original" is not fatal to the report's admissibility. *See* 42 Pa.C.S.A. § 6109(b). Rather, we consider whether the trial court's decision to permit Trooper Wassell to supplement the report through testimony constituted an abuse of discretion. *Carter*, 320 A.3d at 147. We conclude that the report's admission was not "manifest[ly] unreasonable[]," the product of "partiality, prejudice, bias, or ill-will," or so lacking in support "as to be clearly erroneous." *Id.* Appellant's fourth issue entitles him to no relief.

In his fifth, and final, issue, Appellant argues there was insufficient evidence to sustain his convictions. We review Appellant's arguments in turn.

> Preliminarily, a challenge to the sufficiency of the evidence
>
> presents a question of law and is subject to plenary review under a *de novo* standard. *Commonwealth v. Smith*, … 234 A.3d 576, 581 ([Pa. ]2020). When reviewing a sufficiency challenge, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, was sufficient to prove every element of the offense beyond a reasonable doubt. *Commonwealth v. Mobley*, 14 A.3d 887, 889 (Pa. Super. 2011). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bowens*, 265 A.3d 730, 740 (Pa. Super. 2021) (*en banc*) (citation omitted). "The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* (citation omitted). Finally, the trier of fact has the authority to determine the weight of the evidence and credibility of the witnesses and is free to believe all, part, or none of the evidence. *Id.* at 741.

*Commonwealth v. Whitmire*, 300 A.3d 484, 489-90 (Pa. Super. 2023) (footnote omitted). Further, "[t]his Court may not substitute its judgment for

- 23 -

that of the factfinder. If the record contains support for the verdict, it may not be disturbed." ***Commonwealth v. McFarland***, 278 A.3d 369, 381 (Pa. Super. 2022) (quotation omitted).

> Concerning DUI – high rate, Appellant argues that
>
> the Commonwealth failed to offer sufficient evidence of compliance with the breath test procedures and regulations. The particular regulation at issue is [] 67 Pa. Code § 77.24(b)(2)[,] which requires that a simulator test using a simulator solution designed to give a reading of .10%, to be conducted immediately after the second actual alcohol breath test has been completed. There was no testimony provided that a simulator test was conducted and that it gave a reading of .10% immediately after the second actual alcohol breath test was completed. This simulator test is required every time a breath test is utilized to determine whether the test results were accurate and whether the breath testing device should be removed from service.

Appellant's Brief at 34; ***see also id.*** (Appellant arguing that "[t]he admissibility of chemical test results depends on strict compliance with the statutory requirements of 75 Pa.C.S.A. § 1547(c) and 67 Pa. Code § 77.24." (some citations omitted)).

Before addressing the merits of Appellant's claim, we consider whether Appellant has preserved this purported sufficiency challenge to his DUI – high rate conviction.

Recently, in ***Commonwealth v. Mishik***, 203 WDA 2024 (Pa. Super. 2024) (unpublished memorandum),[14] we considered an identical issue, in the

---

[14] Pursuant to Pa.R.A.P. 126(b), this Court's unpublished memorandum decisions filed after May 1, 2019 may be cited for their persuasive value.

same procedural posture.[15]   In **Mishik**, the defendant proceeded to trial on DUI offenses.   **Mishik**, 203 A.3d 2024 (unpublished memorandum at 4). There, as here,

> [d]uring closing argument, [the defendant] contended for the first time that the breath test procedures were "incomplete and insufficient" because [the trooper] did not testify that he performed a simulator test following Appellant's testing, and, thus, [the defendant] "could ask the court not to consider the result."

**Id.** (record citation omitted).

The trial court convicted the defendant, and the defendant appealed. **Id.** (unpublished memorandum at 5).   On appeal, the defendant argued, *inter alia*, that the Commonwealth's evidence was insufficient for failing to present testimony that the trooper conducted a simulator test.   **Id.** (unpublished memorandum at 14).   "Specifically, [the defendant] argue[d] that '[t]he admissibility of chemical test results depends on strict compliance with the statutory requirements of 75 Pa.C.S.[A.] § 1547(c) and 67 Pa. Code § 77.24.'" **Id.**

We noted that the authority relied upon by the defendant "in support of this sufficiency argument pertain[ed] to the **admissibility** of chemical test results, including breath tests.   **See** 75 Pa.C.S.[A.] § 1547(c) (describing requirements for admissibility of chemical tests results); 67 Pa. Code § 77.24

---

[15] Incidentally, defense counsel for Appellant in the instant case also represented the defendant in **Mishik**.

(describing breath test procedures)." ***Id.*** (emphasis added). As a result, we concluded that the defendant waived her argument by not objecting to the results' admission:

> [The defendant's] argument implicates the underlying admissibility of the results, not the sufficiency of the evidence supporting her conviction. [The defendant] did not, however, challenge the admissibility of the test results, either in her motion to suppress or at trial when the Commonwealth proffered the test results, and the court admitted them.[FN1] Accordingly, any argument concerning their admissibility is waived.
>
> ---
>
> [FN1] [The defendant's] mention of this claim during her closing argument was insufficient to preserve it for appeal; rather, she was required to make a contemporaneous objection when the court admitted the test results.

***Id.*** (unpublished memorandum at 15) (citations omitted; footnote in original, renumbered).

Instantly, we find ***Mishik*** persuasive, and adopt its rationale. Appellant's argument concerning DUI – high rate implicates the admissibility of evidence, not the sufficiency of the evidence supporting his conviction. As Appellant otherwise failed to object to the admissibility of the test results, we deem this sufficiency challenge waived.

Even had Appellant preserved a sufficiency challenge to DUI – high rate, he would be entitled to no relief.

Motor Vehicle Code Section 3802(b) defines DUI – high rate as follows:

> **(b) High rate of alcohol.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10%

but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(b).

To sustain a conviction under subsection 3802(b), the Commonwealth must prove "(1) [an a]ppellant was driving, operating, or in actual physical control of the movement of a vehicle, and (2) [an a]ppellant's BAC was at least 0.10% but less than 0.16% within two hours of driving, operating, or being in control of the vehicle." *Commonwealth v. Haight*, 50 A.3d 137, 141 (Pa. Super. 2012) (citation omitted).

Here, Trooper Wassell testified that he observed Appellant driving his vehicle on 38th Street, in Erie. N.T., 4/24/24, at 5. Trooper Wassell stopped Appellant at approximately 1:01 a.m. *Id.* After taking Appellant into custody, Trooper Bell performed a chemical breath test on Appellant at approximately 1:42 a.m. *See* Exhibit 1 (report). The report revealed that Appellant's BAC was 0.132%. *Id.*

Upon review, and considering the evidence in the light most favorable to the Commonwealth, we conclude the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, Appellant's guilt for DUI – high rate. *See Whitmire*, 300 A.3d at 489. If preserved, Appellant's sufficiency challenge to his conviction for DUI – high rate would entitle him to no relief.

Turning to Appellant's sufficiency challenge to DUI – general impairment, we observe that Appellant has failed to include any argument or

citation to relevant legal authorities in his appellate brief. Accordingly, this challenge is waived. *See Love*, 896 A.2d at 1287; *see also Commonwealth v. Tchirkow*, 160 A.3d 798, 804 (Pa. Super. 2017) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant." (citation omitted)).

Even if Appellant had preserved a sufficiency challenge to his conviction of DUI – general impairment, his claim lacks merit.

Section 3802 of the Motor Vehicle Code provides, in relevant part:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

To sustain a conviction under subsection 3802(a)(1), the Commonwealth must prove "the accused was driving, operating or in actual physical control of the movement of the vehicle during the time when he or she was rendered incapable of safely driving due to the consumption of alcohol." *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

The *Segida* Court further explained:

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs

of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony.

*Id.*

Here, as discussed above, Trooper Wassell observed Appellant operating his vehicle on a public roadway. N.T., 4/24/24, at 5. Trooper Wassell testified that he stopped Appellant due to Appellant's erratic driving. *Id.* Trooper Wassell explained that when he began interacting with Appellant, he "detected a strong odor of alcoholic beverage coming from inside the vehicle." *Id.* Appellant advised Trooper Wassell that he was leaving from the bar and had consumed alcohol. *Id.* at 5-6. Trooper Wassell testified that he observed Appellant "to have bloodshot, watery eyes and thick, slurred speech." *Id.* at 10. Based upon his training and experience, Trooper Wassell opined that Appellant "was under the influence of alcohol." *Id.* at 6.

Upon review, we conclude the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, Appellant's guilt for DUI – general impairment. *See Whitmire*, 300 A.3d at 489; *Segida*, 985 A.2d at 879. If preserved, Appellant's sufficiency challenge to his conviction for DUI – general impairment would entitle him to no relief.

- 29 -

Concerning driving on roadways laned for traffic, Appellant argues that MVC Section 3309(1) "does not require absolute adherence so long as the movements outside the lane can be done safely." Appellant's Brief at 38. Appellant maintains that "[g]iven the road conditions that night, Appellant's driving was legal, safe and not erratic." *Id.*

MVC Section 3309(1) provides as follows:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

> **(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S.A. § 3309(1).

In its Rule 1925 opinion, the trial court highlights, in part, the following testimony from Trooper Wassell to support its conclusion that the Commonwealth presented sufficient evidence to support a conviction for driving on roadways laned for traffic:

[Appellant would] swing back to the right and catch himself and put himself back in the lane. [Appellant] swings over. He's not turning. At no time is his turn signal on. But he's inside the turn lane every time, and then he swings back over.

Trial Court Opinion, 7/23/24, at 6 (quoting N.T., 4/24/24, at 25); *see also* N.T., 4/24/24, at 29 (Trooper Wassell testifying that Appellant did not maintain his lane "on four or five different occasions").

Upon review, we agree with the trial court that the Commonwealth presented sufficient evidence to prove Appellant's guilt, beyond a reasonable doubt, for driving on roadways laned for traffic. **See Whitmire**, 300 A.3d at 489; **see also Commonwealth v. Best**, 120 A.3d 329, 344 (Pa. Super. 2015) (holding testimony that the defendant "entered the opposite lane of travel, is sufficient to support [a] conviction for driving on roadways laned for traffic."). Appellant's sufficiency challenge to his conviction for roadways laned for traffic entitles him to no relief.

Finally, concerning careless driving, Appellant argues that "his driving did not create any hazard to any persons or motorists as there were no vehicles on the roadway or pedestrians that would sustain a conviction for this offense." Appellant's Brief at 39. Appellant cites no authority to support his claim; therefore, it is waived. **See Love**, 896 A.2d at 1287; **see also** Pa.R.A.P. 2119(a) (requiring argument to be supported by "citation of authorities as are deemed pertinent.").

Even if Appellant had preserved his sufficiency challenge to careless driving, his claim would fail.

MVC Section 3714(a) defines careless driving as follows: "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714(a). "Careless disregard" is defined as "less than willful and wanton conduct, but more than ordinary negligence or the mere absence of care under the

circumstances." ***Commonwealth v. Ford***, 141 A.3d 547, 556 (Pa. Super. 2016) (citation omitted).

In its Rule 1925 opinion, the trial court rejected Appellant's sufficiency challenge to his careless driving conviction, citing the icy and snowy conditions, and the fact that there was "heavy traffic" when Trooper Wassell initiated the traffic stop. Trial Court Opinion, 7/23/24, at 6 (citing N.T., 4/24/24, at 30 (Trooper Wassell agreeing that road conditions were icy and snowy, and that there was "heavy traffic" at the time of the traffic stop)).

Upon review, we agree with the trial court that the Commonwealth presented sufficient evidence to prove Appellant's guilt, beyond a reasonable doubt, of careless driving. ***See Whitmire***, 300 A.3d at 489. The record discloses that Appellant deliberately placed himself in a state of intoxication, and thereafter drove erratically on a heavily trafficked roadway. If preserved, Appellant's sufficiency challenge to his conviction for careless driving would merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/25/2025